# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RECEIVED

2006 JUL 25 P 4: 44

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

BETTY WEATHERS, )
)
    Plaintiff, )
)
v. )
)
ELI LILLY AND COMPANY, )
YOLANDA MCCAIN, et al., )
)
    Defendants. )

CASE NO.: 2: O6CV 666

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that defendant Eli Lilly and Company ("Lilly"), pursuant to 28 U.S.C. §§ 1441 and 1446, hereby removes this case from the Circuit Court of Elmore County, Alabama, to the United States District Court for the Middle District of Alabama, Northern Division, and in support thereof states as follows:

**BACKGROUND**

1.    Plaintiff commenced this action on July 13, 2006, by filing her Complaint in the Circuit Court of Elmore County, Alabama. (True and correct copies of all process, pleadings, discovery, and orders served upon defendants to date in the Circuit Court of Elmore County, Alabama, are attached hereto collectively as Exhibit "A".)

2.    Lilly was served with the Complaint on July 17, 2006.

3.    A Tag Along Notice is being filed with the Judicial Panel on Multidistrict Litigation ("MDL Panel") because this action is related to the Zyprexa Products Liability Litigation previously transferred to the Honorable Jack B. Weinstein in the Eastern District of New York as MDL 1596.

4.    The MDL Panel will shortly issue a Conditional Transfer Order conditionally transferring this action to the Eastern District of New York for consolidated and coordinated pretrial proceedings in MDL 1596.

## AMOUNT IN CONTROVERSY

5.    The Complaint alleges that "Plaintiff was caused to suffer injuries and damages including, but not limited to, the onset of diabetes mellitus, physical pain and suffering, mental and emotional anguish and distress, and economic loss" as a result of her alleged ingestion of Zyprexa®. *See* Compl. at ¶ 10.

6.    The Complaint alleges that "Plaintiff incurred, and will continue to incur hospital, medical, and incidental expenses" as a result of her alleged ingestion of Zyprexa. *See* Compl. at ¶ 11.

7.    Plaintiff avers that Lilly's conduct was the cause of Plaintiff's claimed injuries and seeks punitive damages. *See* Compl. at ¶ 21.

8.    Under Alabama Law, by bringing a civil action for physical injury, plaintiffs can claim and recover punitive damages of up to $1,500,000 or three times the amount of compensatory damages, whichever is greater. Ala. Code § 6-1-21(d). Accordingly, the amount and nature of compensatory damages to which Plaintiff alleges she is entitled, combined with her allegations of intentional conduct and the corresponding punitive damages she is seeking, demonstrate that the amount in controversy clearly exceeds the jurisdictional minimum of $75,000.

9.    Alabama courts routinely uphold awards far in excess of $75,000 for actual and punitive damages in personal injury actions. *See, e.g., Hobart Co. v. Scroggins*, 776 So. 2d 56 (Ala. 2000) (affirming award of $250,000 in compensatory damages on claim under Alabama Extended Manufacturers Liability Doctrine ("AEMLD")); *Hill Mfg. Co. v. Webb*, 724

So. 2d 1137 (Ala. 1998) (affirming award of $300,000 in compensatory and $600,000 in punitive damages on claim under AEMLD); *Wal-Mart Stores, Inc. v. Robbins*, 719 So. 2d 245 (Ala. Civ. App. 1998) (affirming award of $10,000 compensatory damages and $190,000 in punitive damages caused by ingestion of prescription drug).

      10.    As further evidence that the amount in controversy requirement is met, Plaintiff's counsel here has filed several virtually identical complaints in state courts in Ohio claiming damages well in excess of $75,000. *See, e.g., Spratt v. Eli Lilly and Co.*, No. CV-05-559408 (Ct. of Com. Pleas Cuyahoga County, Ohio, filed April 6, 2005) (attached as Exhibit "B").

      11.    Plaintiff seeks damages in such an amount "as a jury deems reasonable." *See, e.g.*, Compl. at p. 7. Further, Plaintiff seeks punitive damages in an unspecified amount "sufficiently large to be an example to others," (*see* Compl. ¶ 21), which is included in the calculation of the amount in controversy. *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943). On these facts, Lilly reasonably believes and therefore avers that the amount in controversy in this action exceeds $75,000 exclusive of interest and costs.

## DIVERSITY OF CITIZENSHIP

      12.    Plaintiff states that she resides in Elmore County, Alabama. *See* Compl. at ¶ 8.

      13.    Lilly, the only properly joined defendant, is a citizen of the State of Indiana. It is a corporation incorporated under the laws of Indiana, and it has its principal place of business at the Lilly Corporate Center, Indianapolis, IN 46285.

      14.    Plaintiff alleges that defendant Ms. McCain is a resident of Alabama. *See* Compl. at ¶ 5.

15.    Plaintiff names fictitious defendants A-F; however, the citizenship of these fictitious defendants is irrelevant and must be disregarded pursuant to 28 U.S.C. § 1441(a).

16.    This Court has jurisdiction over this matter based on diversity of citizenship. *See* 28 U.S.C §§ 1332 and 1441. While the citizenship of Ms. McCain may not be diverse from the Plaintiff's citizenship, Lilly removes this action based on the doctrine of fraudulent joinder. Disregarding the citizenship of the fraudulently joined Ms. McCain, there is diversity of citizenship between Plaintiff and the remaining defendant, Lilly. Further, the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests and costs.

17.    Ms. McCain should be disregarded for purposes of determining jurisdiction under 28 U.S.C. §§ 1332 and 1441(b) on the grounds of fraudulent joinder. *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359-1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). For the reasons set forth below, there is no possibility Plaintiff will be able to establish liability against Ms. McCain under the allegations of the Complaint.

## THE FRAUDULENTLY JOINED DEFENDANT

18.    Fraudulent joinder does not require proof of fraud. Rather the doctrine of fraudulent joinder permits the Court to ignore the citizenship of a non-diverse defendant where there is "no possibility that the plaintiff can establish any cause of action against the resident defendant." *See Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997).

19.    The potential for legal liability "'must be reasonable, not merely theoretical.'" *Legg v. Wyeth*, 428 F.3d 1317, 1324 n.5 (11th Cir. 2005) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992)). The Eleventh Circuit in *Legg*, noted that "possible must mean 'more than such a possibility that a

designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Id.* (citing *Braden v. Wyeth*, CV-04-PT-235-E (N.D. Ala. June 30, 2004)). Ms. McCain was fraudulently joined because reason and common sense dictate that there is no possibility Plaintiff can prevail on any of the claims asserted against her.

20.    Plaintiff alleges causes of action under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and for strict products liability, negligence, breach of implied warranty, breach of express warranty, fraud, negligent misrepresentation, and fraud by concealment. *See* Compl. at ¶¶ 22-72.

21.    There is no reasonable basis for predicting that Ms. McCain would be held liable under the AEMLD because there is no cause of action against pharmaceutical representatives for injuries allegedly caused by the drugs they represent. *See, e.g., Bloodsworth v. Smith & Nephew, Inc.*, Civ. No. 2:05-622-D, 2005 U.S. Dist. LEXIS 38756, at *17-21 (M.D. Ala. Dec. 19, 2005) (holding "that there is no possibility that [the plaintiff] could establish a claim against [sales representative defendant] in state court for a violation of the AEMLD"); *Devise v. Kenmore*, No.: CV-03-J-943-S, 2003 U.S. Dist. LEXIS 26789, at *8-9 (N.D. Ala. May 12, 2003) (holding that sales representative defendant "is not a manufacturer, distributor or seller of the [product] at issue," and therefore "the plaintiffs have failed to state a claim upon which relief can be granted against this defendant under the AEMLD"); *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 287 (S.D.N.Y. 2001) ("*Rezulin I*") (applying Alabama law) (finding resident pharmaceutical representatives fraudulently joined in claims for product liability under the AEMLD, negligence, wantonness, fraudulent misrepresentation, and fraudulent suppression). An AEMLD claim may be asserted only against manufacturers and

sellers of the product at issue, not individual defendants, such as Ms. McCain. *See Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) ("In an AEMLD action, the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product"). Since Ms. McCain is neither a manufacturer nor a seller of the prescription medicine Zyprexa, she cannot be held liable under the AEMLD. *See, e.g., Rezulin I*, 133 F. Supp. 2d at 287-88 (holding that AEMLD claim against pharmaceutical sales representative failed because he was not a manufacturer, seller, or supplier). The AEMLD does not impose liability on the lower level employees of a seller or supplier, because "neither the applicable case law nor the policy objectives articulated by Alabama and other state courts can support the extension of the AEMLD to encompass [employees of the seller or supplier]." *Bowman v. Coleman Co., Inc.*, No. 96-0448-P-C, Slip Op. at 8 (S.D. Ala. Sept. 3, 1996). Accordingly, since there is no legal basis for the claims made against Ms. McCain, she is fraudulently joined.

22.     Plaintiff also makes no specific factual allegations regarding any conduct of Ms. McCain with respect to any of Plaintiff's claims. Instead, Plaintiff makes only broad conclusory assertions by simply lumping Ms. McCain and the "fictitious defendants" together with Lilly. *See, e.g.*, Compl. at ¶ 36 ("Defendants so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over-promoted, and supplied Zyprexa, that it was dangerous and unsafe for the use and purpose for which it was intended."). Such allegations are not sufficient to state a factual basis for any claim against Ms. McCain. *See, e.g., Lizana v. Guidant Corp.*, No. 1:03cv254, slip op. at 5 (S.D. Miss. Jan. 21, 2004) (finding sales representative fraudulently joined, and observing that a "plaintiff wishing to defeat a fraudulent joinder claim must plead specific facts and avoid advancing claims in general terms or

make mere allegations of wrongdoing on the part of the non-diverse defendant"); *In re Rezulin Prods. Liab. Litig*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001) ("*Rezulin II*") (pharmaceutical representative was fraudulently joined where plaintiff made "no specific allegations" against him); *see also Wiggins v. American Home Products Corp.*, No. 01-J-2303-NW, 2001 U.S. Dist. LEXIS 24641, at *10 n.4 (N.D. Ala. Oct. 2, 2001) (finding resident defendant fraudulently joined because "plaintiffs ma[de] no specific allegation[s] against [the in-state defendant] at all in any of the eight counts of the complaint"), *aff'd*, 37 Fed. Appx. 980 (11th Cir. 2002); *Lyons v. American Tobacco Co.*, No. 96-0881-BH-S, 1997 U.S. Dist. LEXIS 18365, at *19 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

      23.    Additionally, there is no possibility that Plaintiff will prevail on any of her claims against Ms. McCain because Plaintiff has not alleged and cannot allege that Ms. McCain personally participated in any alleged wrongdoing. *See, e.g., Stern v. Wyeth*, No. 02-80620-CIV-MARRA, at 6 (S.D. Fla. Jan. 22, 2003) (denying plaintiff's motion to remand where plaintiff failed to adequately allege "personal involvement" by an employee defendant in the alleged tortious conduct of the corporate defendant employer); *Kimmons v. IMC Fertilizer*, 844 F. Supp. 738, 740 (M.D. Fla. 1994) (defendant fraudulently joined where no allegations of personal participation were made). In fact, Ms. McCain, took no action independent of Lilly, had no involvement in the manufacture or development of Zyprexa, had no involvement in the preparation of package inserts, had no control over the content of written warnings and, at all times, acted within the scope of her employment by Lilly. *See* Declaration of Yolanda McCain, attached as Exhibit "C."

24.    There is no possibility that Plaintiff could prevail on her warranty claims against Ms. McCain because she is not a supplier or seller of Zyprexa. *See* Exhibit "C." The *sine qua non* of a breach of warranty claim – whether for breach of express warranty or breach of implied warranty – is that a warranty is made only by "the seller" of the goods. *See* Ala. Code § 7-2-313(1) & 7-2-314(1) (2002) (both express and implied warranty claims refer to the creation of warranties by the "seller"). The seller of a product is, as a matter of law, the corporate entity that makes the sale – not the employee of the corporation. *See Rezulin I*, 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," and not the professional representative); *see also Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408 (10th Cir. 1958) (drug store employee who sold defective product was fraudulently joined because he was not a "seller" and thus could not be held liable for breach of warranty); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product").

25.    Plaintiff's fraud allegations state no cause of action against Ms. McCain for fraud or fraud by concealment because Plaintiff has failed to plead with the particularity required by Ala. R. Civ. P. 9(b) and Fed. R. Civ. P. 9(b). *See, e.g., Miller v. Mobile County Board of Health*, 409 So. 2d 420, 422 (Ala. 1981) (dismissing plaintiff's fraudulent concealment claim pursuant to Ala. R. Civ. P. 9 where the complaint failed to "show time, place and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained"); *Rezulin I*, 133 F. Supp. 2d at 283-84 (finding sales representative fraudulently joined due to plaintiff's failure to plead fraud claims with particularity); *Wakeland*

*v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against defendants violated Rule 9(b) and resulted in finding of fraudulent joinder). Whether a claim sounds in fraud depends not on "the label used in the pleading," but on whether the "wording and imputations of the complaint are classically associated with fraud." *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004); *see also Rezulin I*, 133 F. Supp. 2d at 285 (reasoning that, "although plaintiffs have characterized their claims as being for negligence, in substance they charge fraud" and thus trigger Rule 9(b)). Here, not only has plaintiff failed to identify any prescribing physician(s) in her Complaint and failed to show that Ms. McCain ever promoted or sold the drug to any of her prescribing physician(s), there are also no statements attributed to Ms. McCain. *See* Compl. at ¶¶ 1 to 72.

26.    For the reasons stated above, Plaintiff's Complaint states no cause of action against Ms. McCain under the AEMLD or for products liability, negligence, negligent misrepresentation, fraud, fraudulent concealment, or breach of warranty.

## PROCEDURAL REQUIREMENTS

27.    This Court has jurisdiction over this matter based on diversity of citizenship. *See* 28 U.S.C. §§ 1332 and 1441.

28.    Lilly was served with the Complaint on July 17, 2006, accordingly, this Notice is timely, as it was filed (a) within thirty days after receipt by Lilly of the notice from which it first ascertained that the case was one which was removable and (b) within one year of the filing of the Complaint.

29.    Although consent is not needed where a co-defendant has been fraudulently joined, *see Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Wiggins v. American Home Products Corp.*, No. 01-J-2303-NW, 2001 WL 34013629, *3 (N.D. Ala. Oct. 2, 2001), Ms. McCain has consented to removal. *See* Exhibit "C."

30.    The United States District Court for the Middle District of Alabama is the federal judicial district encompassing the Circuit Court of Elmore County, Alabama, where this suit was originally filed.  Venue, therefore, is proper in this district under 28 U.S.C. § 1441(a).

31.    Written notice of the filing of this Notice of Removal will be given to the Plaintiff, and a copy of this Notice of Removal will be filed with the Clerk of the Circuit Court for Elmore County, Alabama, as provided by 28 U.S.C. § 1446(d).

WHEREFORE, notice is hereby given that this action is removed from the Circuit Court of Elmore County, Alabama, to the United States District Court for the Middle District of Alabama.

DATED this 25th day of July, 2006

Respectfully submitted,


_Al D Mathis_

James C. Barton, Jr.
Bar Number:  ASB-0237-B51J
Email: jbartonjr@jbpp.com

Alan D. Mathis
Bar Number:  ASB-8922-A59M
Email: adm@jbpp.com

Attorneys for defendant
Eli Lilly and Company

**JOHNSTON BARTON PROCTOR & POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama  35203
Telephone: (205) 458-9400
Facsimile: (205) 458-9500

**OF COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Removal was served by first class mail, postage prepaid, on this _25th_ day of July 2006 upon the following:

E. Frank Woodson, Esq.
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, Alabama 36104

_____
Of Counsel

W0566559.DOC

# EXHIBIT A

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number<br><br>CV 06 - 373 |
|---|---|---|

IN THE _____CIRCUIT_____ COURT OF _____ELMORE_____ COUNTY

**Plaintiff**    BETTY WEATHERS    **v. Defendant**    ELI LILLY AND COMPANY., ET AL.

**NOTICE TO** _____ ELI LILLY AND COMPANY _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____Frank Woodson_____ WHOSE

ADDRESS IS _____Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., 218 Commerce Street; Montgomery, AL 36104_____ .

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _____30_____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☒ Service by certified mail of this summons is initiated upon the written request of _____BETTY WEATHERS_____ pursuant to the Alabama Rules of Civil Procedure.
_Plaintiff's Attorney_

Date ____7 - 13 - 06____    _(signature)_ By: _____
                            Clerk/Register

☒ Certified Mail is hereby requested.    _(signature)_
                                         Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____ .
                                                            (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ _____ County,
Alabama on _____ .
            (Date)

_____Date_____    _____Server's Signature_____

_____Address of Server_____    _____Type of Process Server_____

IN THE CIRCUIT COURT OF
ELMORE COUNTY, ALABAMA

| | | |
|---|---|---|
| BETTY WEATHERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. _CV D6-373_ |
| | ) | |
| ELI LILLY AND COMPANY; and | ) | |
| YOLANDA MCCAIN, Sales | ) | |
| Representative; and FICTITIOUS | ) | |
| DEFENDANTS A, B, C, D, E, and F, | ) | |
| being those persons, sales | ) | **JURY TRIAL DEMANDED** |
| representatives, firms or corporations | ) | |
| whose fraud, scheme to defraud, | ) | |
| negligence, and/or other wrongful | ) | |
| conduct caused or contributed to the | ) | |
| Plaintiff's injuries and damages, and | ) | |
| whose true names and identities are | ) | |
| presently unknown to the Plaintiff but | ) | |
| will be substituted by amendment when | ) | |
| ascertained, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## STATEMENT OF FACTS

1.     This is a civil action brought on behalf of Plaintiff Betty Weathers (hereinafter referred to as "Plaintiff"). Plaintiff is a citizen of the United States and the State of Alabama.

2.     Defendant Eli Lilly and Company (hereinafter referred to as "Defendant Lilly") is incorporated in the state of Indiana and has its principal place of business in Indianapolis, Indiana.

3.    At all times relevant hereto, Defendant Lilly was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceutical products including Zyprexa (Olanzapine).

4.    Defendant Lilly does business in the state of Alabama and, on information and belief, at all times relevant hereto, manufactured, advertised, marketed, promoted, sold, and distributed Zyprexa in the state of Alabama.

5.    At all times relevant hereto, Defendant Yolanda McCain (hereinafter referred to as "McCain"), whose address is 9557 Lochfield Drive, Montgomery, Alabama 36117, was a sales representative of Eli Lilly.  Further, at all times relevant hereto, Defendant McCain was in the business of marketing, selling and distributing the pharmaceutical Zyprexa.

6.    Fictitious Defendants A, B, C, D, E, and F are those persons, sales representatives, district managers, firm or corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the injuries sustained by the Plaintiff, and whose true names are unknown to Plaintiff at this time, but will be substituted by amendment when ascertained.  At all times relevant hereto, the Fictitious Defendants were in the business of marketing, selling, and distributing Zyprexa in and from the state of Alabama, including Elmore County.

7.    "Defendants" refers collectively to all Defendants named in this Complaint unless otherwise specified.

8.    Plaintiff's claim accrued all or in part in Elmore County, and Plaintiff resides in Elmore County.  Some of the Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in Elmore

2

County. Venue and jurisdiction are therefore proper. The claims of the Plaintiff herein satisfy the jurisdictional amount of this Court.

9.     Zyprexa is among a group of drugs called the "atypical antipsychotic drugs" and is prescribed for the treatment of schizophrenia, bipolar mania, and other mental/mood conditions.

10.     As a direct and proximate result of the ingestion of Zyprexa, Plaintiff was caused to suffer injuries and damages including, but not limited to, the onset of diabetes mellitus, physical pain and suffering, mental and emotional anguish and distress, and economic loss. Plaintiff was caused to suffer serious and permanent injuries to her health, strength, and activity, and severe shock to her nervous system, and will continue to suffer mental pain, all to her general damages in a sum with the jurisdiction of this Court.

11.     As a direct and proximate result of the ingestion of Zyprexa, Plaintiff was required to, and did employ physicians to examine, treat, and care for her, and Plaintiff incurred, and will continue to incur hospital, medical, and incidental expenses.

12.     At all times relevant hereto, the Defendants themselves, or through others, did manufacture, create, design, test, label, sterilize, package, supply, market, sell, advertise, and otherwise distribute Zyprexa.

13.     Plaintiff is informed, believes, and thereon alleges, that total profits from the sale of Zyprexa exceed hundreds of millions of dollars.

14.     Zyprexa has been widely advertised by the Defendants as an effective treatment for mental/mood disorders with fewer adverse side effects than other treatments.

3

15.    Beginning in 1996, Defendants aggressively marketed and sold Zyprexa by misleading potential users about the safety of the product and by failing to protect users of serious dangers which Defendants knew or should have known could result from Zyprexa use.

16.    The advertising, by affirmation, misrepresentation, or omission, falsely and fraudulently sought to create the image and impression that Zyprexa use was safe and had fewer side effects and adverse reactions than other methods of treatment for mental/mood disorders.

17.    Defendants purposefully minimized and understated health hazards and risks associated with Zyprexa. Defendants, through promotional literature, deceived potential users of Zyprexa and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. Defendants falsely and fraudulently withheld relevant information from potential Zyprexa users. Further, Defendants falsely and fraudulently withheld relevant information from Zyprexa users' doctors, thereby preventing those doctors from conducting a complete and fully-informed risk/benefit analysis before prescribing Zyprexa.

18.    At least as early as 1998, the medical literature conclusively revealed data which linked Zyprexa with causing diabetes mellitus. An indicative report was published on October 15, 1998 in the Society of Biological Psychiatry, Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes." There are other numerous reports and studies throughout the medical literature from 1998 through the

present which detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, metabolic syndrome, diabetes, and ketoacidosis. The known dangers of Zyprexa were never communicated by Defendants to the Plaintiff's physician who prescribed the product to Plaintiff. Plaintiff, therefore, was ignorant of Zyprexa's defects before ingesting the product.

19.    The physicians who prescribed Zyprexa to Plaintiff relied on the representations made to them by Defendants prior to the date of prescribing Zyprexa for use. The physician relied on the representations regarding the safety of Zyprexa and would not have recommended for use or prescribed Zyprexa if they had known the true facts regarding the safety of the product.

20.    Prior to the date upon which Zyprexa was prescribed to Plaintiff, Defendants knew or should have known that it was extremely dangerous and unsafe for use by the general public for its intended purpose. The dangers of Zyprexa included, by way of example, the likelihood of developing hyperglycemia, diabetes mellitus, ketoacidosis, and other injuries. Defendants failed to take appropriate action to cure these defects or, alternatively, to appropriately warn users and their physicians of the product's dangerous characteristics.

21.    Defendants thereby acted with malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future. This

5

wrongful conduct was done with the advance knowledge, authorization, and/or ratification of officers, directors, and/or managing agents of Defendant Lilly.

<u>COUNT I</u>

**(Strict Liability in Tort, Failure to Warn)**

22.     Plaintiff realleges paragraphs 1-21 of this Complaint as if fully set out herein.

23.     At all times relevant hereto, Zyprexa was defective and unsafe in manufacture, and was so at the time it was distributed by Defendants and ingested by Plaintiff. Zyprexa was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of Zyprexa. Given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects. Zyprexa was also defective in that the product manufactured and distributed differed from the manufacturer's intended results. These defects caused serious injuries to the consumer when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed and in the manner recommended by Defendants.

24.     Zyprexa was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of Zyprexa, i.e., ingestion to aid in treating mental/mood disorders, involved substantial dangers not readily recognizable by the ordinary user of the product. Defendants failed to warn of the known or knowable likelihood of injury including, but not limited to, the likelihood the user would develop diabetes mellitus.

25.    The pharmaceutical drug Zyprexa, designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied, and sold to distributors by Defendants was further defective due to inadequate post-marketing warning or instruction because after Defendants knew or should have known of the risks of injury from Zyprexa, they failed to promptly respond to and warn about the likelihood of injury, including the onset of diabetes mellitus.

26.    Plaintiff did not know, nor had reason to know, at the time she used Zyprexa, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the injuries and damages to Plaintiff as alleged in this Complaint.

27.    Defendants knew that Zyprexa was to be used without inspection for defects by the consumer and that Zyprexa was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT II

### (Alabama Extended Manufacturer's Liability Doctrine)

28.    Plaintiff realleges paragraphs 1-27 of this Complaint as if fully set out herein.

29.    Plaintiff's claims are brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine. The pharmaceutical drug Zyprexa, designed, manufactured, sold, and/or supplied by Defendants was placed into the stream of

7

commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use. Defendants' product reached Plaintiff without substantial change in the condition in which it was sold.

30.    The pharmaceutical drug Zyprexa, designed, manufactured, distributed, sold, and/or supplied by Defendants, was defective due to inadequate testing.

31.    Further, the pharmaceutical drug Zyprexa, designed, manufactured, distributed, sold, and/or supplied by Defendants was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign.

32.    Additionally, Defendants failed to provide timely and adequate warnings or instructions after they knew of the risk of injury from Zyprexa. Plaintiff's injuries were the proximate result of the defective condition of Zyprexa which was unreasonably dangerous to Plaintiff as the ultimate consumer when put to its intended use.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT III

### (Negligence)

33.    Plaintiff realleges paragraphs 1-32 of the Complaint as if fully set out herein.

34.    Defendants had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain, supply, properly warn, prepare for use, and sell Zyprexa.

8

35.    At all times relevant hereto, Defendants knew, or in the exercise of reasonable care, should have known, that Zyprexa was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, maintained, supplied, provided, prepared, and sold with proper warnings, it was likely to injure the user.

36.    Defendants so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over-promoted, and supplied Zyprexa, that it was dangerous and unsafe for the use and purpose for which it was intended.

37.    Defendants were aware of the probable consequences of their conduct. Despite the fact that Defendants knew or should have known that Zyprexa caused serious injuries, they failed to disclose the known or knowable risks associated with the product as set forth above.   Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of Plaintiff's safety.

38.    As a result of Defendants' carelessness and negligence, Zyprexa caused Plaintiff to sustain the damages and injuries as alleged in this Complaint.

**WHEREFORE,** Plaintiff demands judgment against Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV

### (Breach of Implied Warranty)

39.    Plaintiff realleges paragraph 1-38 of the Complaint as if fully set out herein.

40.    At all times relevant hereto, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied, and sold Zyprexa, and prior to the time it was prescribed to Plaintiff, Defendants impliedly warranted to Plaintiff and to her agents that it was of merchantable quality and safe for the use for which it was intended.

41.    Plaintiff and her agents relied on the skill and judgment of Defendants in selecting and using Zyprexa.

42.    Zyprexa was unsafe for its intended use and it was not of merchantable quality as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. Zyprexa was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. Zyprexa caused Plaintiff to sustain damages and injuries as alleged in this Complaint.

43.    After Plaintiff was made aware of her injuries as a result of ingesting Zyprexa, notice was duly given to Defendants of the breach of warranty.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT V

### (Breach of Express Warranty)

10

44.    Plaintiff realleges paragraphs 1-43 of the Complaint as if fully set out herein.

45.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying, and selling of Zyprexa was expressly warranted by Defendants to be safe for use by Plaintiff and other members of the general public.

46.    At the time the express warranties were made, Defendants had knowledge of the purpose for which Zyprexa was to be used and warranted the same to be, in all respects, fit, safe, effective, and proper for such purpose. Zyprexa was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

47.    Plaintiff and her physicians reasonably relied upon the skill and judgment of Defendants and their express warranty in using Zyprexa. The warranty and representations were untrue in that Zyprexa caused severe injury to Plaintiff and was unsafe and, therefore, unsuited for the use for which it was intended. Zyprexa thereby caused Plaintiff to sustain damages and injuries as alleged in this Complaint.

48.    As soon as the true nature of Zyprexa and the falsity of its warranty and representations were discovered, Defendants were notified of the breach of warranty.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VI

### (Fraud)

11

49.     Plaintiff realleges paragraphs 1-48 of the Complaint as if fully set out herein.

50.     Defendants falsely and fraudulently represented to Plaintiff, her physicians, and members of the general public that Zyprexa was safe for use to aid in treating mental/mood disorders.

51.     The representations by Defendants were in fact false. The true facts were that Zyprexa was not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening, and disabling side effects and adverse effects from the product, that the product caused injuries, including but not limited to diabetes mellitus, and Defendants did not disclose or warn users and their physicians about the known risk of injury in using Zyprexa. Defendants misrepresented the safety of Zyprexa, represented that Zyprexa was safe for its indicated use and concealed warnings of the known or knowable risks of injury in using Zyprexa.

52.     When Defendants made these representations, they knew they were false. Defendants made these representations with the intent to defraud and deceive Plaintiff or her physicians and with the intent to induce the use of Zyprexa to aid in the treatment of mental/mood disorders in order to increase Defendants' sales and profits.

53.     At the time Defendants made these representations and at the time Plaintiff took the actions herein alleged, Plaintiff and her physicians were ignorant of the falsity of Defendants' representations and reasonably believed them to be true. In reliance upon these representations, Plaintiff was induced to, and did use Zyprexa as herein described. If Plaintiff had known the actual facts, she would not have used Zyprexa. The reliance of Plaintiff and her physicians upon Defendants' representations

was justified because these representations were made by individuals and entities that appeared to be in a position to know the true facts.

54.    As a result of Defendants' fraud and deceit, Plaintiff was caused to sustain the injuries and damages as alleged in this Complaint.

55.    In doing the acts herein alleged, Defendants acted with oppression, fraud and malice. Plaintiff is therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. This wrongful conduct was done with the advance knowledge, authorization, and/or ratification of officers, directors, and/or managing agents of Defendant.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VII

### (Negligent Misrepresentation)

56.    Plaintiff realleges paragraphs 1-55 of the Complaint as if fully set out herein.

57.    Defendants had an absolute duty to disclose the true facts regarding the safety and testing of Zyprexa since they were the only entities capable of knowing and reporting the true facts. Furthermore, Defendants had a duty to ensure it had a reasonable basis for making the representations as set forth above.

58.    Defendants made these representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information

13

concerning these representations. Furthermore, Defendants were aware that without such information they could not accurately make these representations.

59.    These representations were made to the physician prescribing Zyprexa prior to the date it was prescribed to Plaintiff, and the physician relied on the representations about the safety of Zyprexa when prescribing Zyprexa to Plaintiff.

60.    At the time these representations were made, Defendants concealed from Plaintiff and her physicians their lack of information on which to base their representations and their consequent inability to make these representations accurately.

61.    Defendants made these representations with the intent to induce Plaintiff to ingest Zyprexa in order to increase Defendants' sales and profits.

62.    Defendants falsely represented to Plaintiff, her physicians, and members of the general public that the Zyprexa was safe for use to aid in treatment of mental/mood disorders. The representations by Defendants were in fact false. The true facts were that Zyprexa was not safe for its intended purpose and was, in fact, dangerous to the health and body of Plaintiff and thereby caused her injuries as alleged in this Complaint.

63.    Defendants made these representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information it could not accurately make these representations.

64.    At the time Defendants made these representations, and at the time Zyprexa was prescribed to Plaintiff, Plaintiff and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon these representations, Plaintiff ingested Zyprexa as herein described. The reliance of

14

Plaintiff and her physicians upon Defendants' representations was justified because these representations were made by individuals and entities that appeared to be in a position to know the true facts.

65.     As a result of Defendants' false representations and concealment, Plaintiff was caused to sustain the herein described injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VIII

### (Fraud by Concealment)

66.     Plaintiff realleges paragraphs 1-65 of the Complaint as if fully set out herein.

67.     At all times relevant hereto, Defendants had the duty and obligation to disclose to Plaintiff and to her physicians the true facts concerning Zyprexa: that Zyprexa was dangerous and defective; that Zyprexa was likely to cause serious consequences to users, including injuries such as those experienced by Plaintiff; and that it was unnecessary to use Zyprexa for the purposes indicated.   Defendants withheld this information from Plaintiff, her physician, and the general public prior to the date Zyprexa was prescribed to Plaintiff, and while concealing the following material facts.

68.     At all times relevant hereto, Defendants had the duty and obligation to disclose to Plaintiff and to her physicians the true facts concerning the Zyprexa – that it would cause injuries including but not limited to the onset of diabetes mellitus.

69.     At all times relevant hereto, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff's physicians (and therefore from Plaintiff) with the intent to defraud as alleged in this Complaint.

70.     At all times relevant hereto, neither Plaintiff nor her physicians were aware of the facts set forth above.

71.     As a result of the concealment or suppression of the facts set forth above, Plaintiff sustained injuries and damages as set forth in this Complaint.

72.     In doing the acts herein alleged, Defendants acted with oppression, fraud and malice. Plaintiff is therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. This wrongful conduct was done with the advance knowledge, authorization, and/or ratification of officers, directors, and/or managing agents of Defendant Lilly.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

Respectfully submitted,

K. Frank Woodson (WOO034),
Attorney for Plaintiff

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36104
Telephone: (334)269-2343
Facsimile: (334)954-7555

**JURY DEMAND**

Plaintiff respectfully demands trial by jury on all counts in this cause.

_____
OF COUNSEL

**Defendant's Address for Service:**

ELI LILLY AND COMPANY
National Registered Agents Inc
150 South Perry Street
Montgomery, Alabama  36104

Yolanda McCain
9557 Lochfield Drive
Montgomery, Alabama 36117

17



IN THE CIRCUIT COURT OF ELMORE COUNTY, ALABAMA

Betty Weathers

      Plaintiff,

vs.

Eli Lilly and Company et al
      Defendant.

JUL 13 2006

LARRY DOZIER
CIRCUIT CLERK, ELMORE COUNTY

CASE NO. CV 06-373

### ORDER FOR NON-FILING OF CIVIL DISCOVERY

Pursuant to Rule 5 A.R.Civ.P. (as amended) it is ORDERED that unless the Court directs otherwise, in this cause:

1. Interrogatories, requests for production, requests for admissions and responses thereto, and notices of depositions shall be served in accordance with Rule 5(b), A.R.Civ.P., but shall not be filed with the Clerk except upon order of the Court or for use at trial or in connection with motions. The party responsible for service of the discovery material shall retain the original and become the custodian.

2. No depositions shall be filed with the Clerk unless the Court directs otherwise, or unless in support of or in opposition to a motion. Counsel who notices a deposition shall be the custodian of the deposition and shall maintain the original for filing if the Court so directs.

3. If discovery materials are germane to any motion or response, only the relevant material shall be filed with the motion or response.

4. Whenever any discovery material (request, response, notice) is served, counsel shall contemporaneously deliver to the Clerk a notice identifying the date of service and the nature of the material served or, the first and last page of the document served including the certificate of service. These notices shall be maintained by the Clerk with the civil action file but will not not be docketed.

5. During the pendency of any case the custodian of any discovery material shall provide to counsel for all other parties reasonable access to the material and an opportunity to duplicate the material at the expense of the copying party, and any other person may, with leave of Court, obtain a copy of any discovery material from its custodian upon payment of the expense of the copy.

DONE and ORDERED the 13th day of July, 2006

# EXHIBIT B

## NATIONAL REGISTERED AGENTS, INC.
### SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:   MICHAEL J. HARRINGTON
      ELI LILLY AND COMPANY
      LILLY CORPORATE CENTER
      INDIANAPOLIS, IN 46285-0000

SOP Transmittal #    OH12795

Telephone   (800) 767-1553

Fax   (609) 716-0820

Defendant:   ELI LILLY AND COMPANY

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of OHIO on this 13th day of June, 2005. The following is a summary of the document(s) received:

1)   Title of Action:    CARL SPRATT -VS- ELI LILLY & CO. ETAL

2)   Document(s) served:

| | | |
|---|---|---|
| X  Summons | ___ Subpoena | ___ Injunction |
| X  Complaint | ___ Third Party Complaint | ___ Notice of: _____ |
| ___ Petition | ___ Demand for Jury Trial | ___ Mechanics Lien |
| ___ Garnishment | ___ Default Judgement | X  Other: COMPLAINT STATEMENT OF FACTS |

3)   Court of Jurisdiction/    COMMON PLEAS COURT CUYAHOGA COUNTY OHIO
     Case & Docket Number:    CV05559408

4)   Amount claimed, if any:    SEE ENCLOSED

5)   Method of Service:

| | | | |
|---|---|---|---|
| ___ Personally Served By: | ___ Process Server | ___ Deputy Sheriff | ___ U.S. Marshall |
| X  Delivered Via: | X  Certified Mail | ___ Regular Mail | ___ Facsimile |
| ___ Other: | | | |

6)   Date and Time of Service:    6/13/2005 1:34:42 PM

7)   Appearance/Answer Date:    28 DAYS

8)   Plaintiff's Attorney:    J.P. SAWYER
                             BEASLEY, ALLEN, CROW, METHVIN,
                             PORTIS & MILES
                             P.O. BOX 4160
                             MONTGOMERY, AL 36104
                             334-269-2343

9)   Federal Express Airbill #    790050964545

10)  Call Made To:  Not required

11)  Special Comments:

M. J. HARRINGTON

JUN 14 2005

NATIONAL REGISTERED AGENTS, INC.           Copies To:

Transmitted by: Tena Lumpkins

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for the informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take the appropriate action.

ORIGINAL

SUMMONS IN A CIVIL ACTION   COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO.<br>CV05559408 | D1 CM | SUMMONS NO.<br>6757466 |
|---|---|---|

Rule 4 (B) Ohio

Rules of Civil
Procedure

CARL SPRATT, A MINOR
vs
ELI LILLY & CO. ETAL

PLAINTIFF

DEFENDANT

**SUMMONS**

ELI LILLY AND COMPANY
NATIONAL REGISTERED AGENTS INC
145 BAKER STREET
MARION OH 43302-0000

You have been named defendant in a complaint
(copy attached hereto) filed in Cuyahoga County
Court of Common Pleas, Cuyahoga County Justice
Center, Cleveland, Ohio 44113, by the plaintiff
named herein.

You are hereby summoned and required to
answer the complaint within 28 days after service of
this summons upon you, exclusive of the day of
service.

Said answer is required to be served on:



Plaintiff's Attorney

J.P. SAWYER
P.O. BOX 4160

MONTGOMERY, AL 36104-0000

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

Case has been assigned to Judge:

RONALD SUSTER
Do not contact judge. Judge's name is given for
attorney's reference only.

GERALD E. FUERST
Clerk of the Court of Common Pleas

DATE
Jun 9, 2005

By _____
Deputy

COMPLAINT FILED   04/06/2005

ELI LILLY AND COMPANY
NATIONAL REGISTERED AGENTS INC
145 BAKER STREET
MARION OH 43302-0000

ISN130

IN THE COMMON PLEAS COURT OF CUYHOGA COUNTY, OHIO

FILED

2005 APR -6  A 8 45

GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY

CARL SPRATT, a minor,
By and through his Natural Parent,
Legal Guardian and Next Friend,
TAWANA SPRATT, 3606 Menlo Road,
Shaker Heights, Ohio  44120                )
                                                                )
                        Plaintiffss,                       )
                                                                )
            vs.                                              )   Case No.: _____
                                                                )   Pre-S.B.80 Case
ELI LILLY AND COMPANY; and          )
FICTITIOUS DEFENDANTS A, B,        )
C, AND D, being those persons, firms   )
or corporations whose fraud, scheme   )
to defraud, and/or other wrongful        )
conduct caused or contributed to the    )
Plaintiffss's injuries and damages, and  )
whose true names and identities are      )
presently unknown to the Plaintiffss but )
will be substituted by amendment when )
ascertained,                                         )
                                                                )
                        Defendants.                    )

CV 05 559408    Complaint

33208289

CV05559408

33296419

$ 181.00  DEPOSITED

154547
APR - 6 2005

SECURE COSTS
GERALD E. FUERST, Clerk of Courts
PER _____ DEPUTY

## COMPLAINT

## STATEMENT OF FACTS

1. This is a civil action brought on behalf of Plaintiff, Tawana Spratt, on behalf of her minor child, Carl Spratt.  Plaintiffs, Tawana Spratt and Carl Spratt, are citizens of the United States and the State of Ohio.

2. Defendant, Eli Lilly and Company (hereinafter referred to as "Lilly"), is incorporated in the State of Indiana and has its principal place of business in Indianapolis, Indiana.  At all times relevant herein, Lilly was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing

pharmaceuticals and other products, including Zyprexa (Olanzapine). Lilly does business in the State of Ohio and, on information and belief, at all times relevant, manufactured, advertised, marketed, promoted, sold and distributed Zyprexa in the State of Ohio.

3. Fictitious Defendants A, B, C, and D are those persons, sales representatives, district manager, firm or corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the injuries sustained by the Plaintiffs, whose true and correct names are unknown to Plaintiffs at this time, but will be substituted by amendment when ascertained. At all times relevant hereto, the Fictitious Defendants were in the business of marketing, selling and distributing the pharmaceutical Zyprexa in and from the State of Ohio.

4. Defendant Lilly is engaged, or has been engaged in the design, manufacture, testing, analyzing, distribution, recommendation, merchandising, advertising, promotion, supply and sale to distributors and retailers for resale to physicians, hospitals, medical practitioners and the general public, Zyprexa in the State of Ohio and sold and promoted the drug to Plaintiff, Tawana Spratt, for her minor son, Carl Spratt in the year 2001, who ingested Zyprexa during that time.

5. As a direct and proximate result of the ingestion of Zyprexa, Plaintiffs were caused to suffer injuries and damages, including but not necessarily limited to physical pain and suffering including diabetes, mental and emotional anguish and distress and economic loss. Plaintiffs were caused to suffer serious and permanent injuries to his health, strength and activity, and severe shock to his nervous system, and will continue to suffer mental pain, all to his general damage in a sum with the jurisdiction of this Court.

6. As a direct and proximate result of the ingestion of Zyprexa Plaintiffs were required to, and did, employ physicians to examine, treat and care for him and Plaintiffs incurred, and will incur hospital, medical and incidental expenses.

7. As a further direct and proximate result of the ingestion of Zyprexa, Plaintiffs were prevented from attending to his usual occupation and thereby sustained a loss of earnings and a diminished earning capacity.

8. Zyprexa is among a group of drugs called the "atypical antipsychotic drugs" prescribed for the treatment of schizophrenia and bipolar mania.

9. At all times relevant, the Defendants themselves, or by use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn and otherwise distribute Zyprexa.

10. Zyprexa has been widely advertised by the Defendants as effective treatment for bipolar disorder, with fewer adverse side effects than other treatments.

11. The Defendants, beginning in 1996, aggressively marketed and sold Zyprexa by falsely misleading potential users about the products and by failing to protect users from serious dangers which Defendants knew or should have known to result from use of Zyprexa.

12. Defendants widely and successfully marketed Zyprexa in the United States and in the District of Columbia. Defendants undertook advertising campaigns promoting the virtues of Zyprexa in order to induce widespread use of the product.

13. The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently sought to create the image and impression that the use of Zyprexa was safe

for human use, had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder.

14. Defendants purposefully minimized and understated health hazards and risks associated with Zyprexa. Defendants, through promotional literature, deceived potential users of Zyprexa and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. Defendants, falsely and fraudulently, withheld relevant information from potential users of Zyprexa.

15. Plaintiffs are informed and believe and thereon allege that total profits from the sale of Zyprexa exceeds hundreds of millions of dollars.

16. At least as early as 1998, the medical literature conclusively revealed data which linked Zyprexa with causing diabetes mellitus. An indicative report was published on October 15, 998 in the Society of Biological Psychiatry, Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes." There are other numerous reports and studies throughout the medical literature from 1998 through the present which detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, diabetes and ketoacidosis. The known danger that Defendants said the product Zyprexa was causing hyperglycemia and diabetes was never indicated by Defendants to the Plaintiffs' physician who prescribed the product to Plaintiffs. Plaintiffs were ignorant of said defect of said product prior to ingesting Zyprexa.

17. The physician who prescribed Zyprexa to Plaintiffs relied on the representations made to him by Defendants prior to the date of prescribing Zyprexa for

use. The physician relied on the representations regarding the safety of Zyprexa and would not have recommended for use or prescribed Zyprexa if he had known the true facts regarding the safety of Zyprexa.

18. Prior to the date upon which the aforesaid product was prescribed for Plaintiffs, Defendants knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose. The dangers of this product included, by way of example, the likelihood of developing hyperglycemia, diabetes mellitus or ketoacidosis and other injuries. Defendants failed to take appropriate action to cure the nature of these defects or to appropriately warn users of the product or their physicians of such dangerous characteristics.

19. Defendants thereby acted with malice towards Plaintiffs, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendants.

## COUNT I

### (Strict Liability in Tort, Failure to Warn)

20. Plaintiffs reallege paragraphs 1-19 of the Complaint as if set out here in full.

21. At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by Defendants and ingested by Plaintiffs. The aforesaid product was defective in that it was not properly prepared

(                                      - (

and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of Zyprexa, and given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects. The product was also defective in that the product manufactured and distributed differed from the manufacturer's intended results. These defects caused serious injuries to the user when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed and in the manner recommended by Defendants.

22. Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein.

23. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in treating bipolar disorder, involved substantial dangers not readily recognizable by the ordinary user of the product. Defendants failed to warn of the known or knowable likelihood of injury including, but not limited to, the likelihood the user would develop diabetes mellitus.

24. The Zyprexa designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors by Defendants was further defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risks of injury from Zyprexa, they failed to promptly respond to and warn about the likelihood of injury, including but not limited to, diabetes mellitus.

25. Plaintiffs did not know, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the herein described injuries and damages to Plaintiffs.

26. Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

27. Plaintiffs neither knew, nor had reason to know, at the time of the use of the aforesaid product or at any time prior there, of the existence of the foregoing described defect.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## COUNT II

### (Strict Products Liability Pursuant to Restatement Second of Torts Section 402A 1965)

28. Plaintiffs reallege paragraph 1-27 of the Complaint as if set out here in full.

29. The Zyprexa manufactured and/or supplied by Defendants was placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

30. Alternatively, the Zyprexa manufactured and/or supplied by Defendants, was defective in design or formulation in that when it was placed in the stream of commerce, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect and more dangerous than other forms of treatment for bipolar disorder.

31. The Zyprexa manufactured and/or supplied by Defendants, was defective due to inadequate warnings or instructions because the Defendants knew or should have known, that the product created a risk of harm to consumers and these Defendants failed to adequately warn of said risks.

32. The Zyprexa manufactured and/or supplied by Defendants was defective due to inadequate warning and/or inadequate testing.

33. The Zyprexa manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because after the Defendants knew or should have known of the risk of injury from Zyprexa, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

34. As a proximate and legal result of the defective and unreasonably dangerous condition of these products manufactured and/or supplied by Defendants, Plaintiffss was caused to suffer the herein described injuries and damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## COUNT III

### (Negligence)

35. Plaintiffs reallege paragraphs 1-34 of the Complaint as if set out in full herein.

36. At all times herein mentioned, Defendants had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

37. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care, should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

38. Defendants so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over promoted and supplied the aforesaid products, that it was dangerous and unsafe for the use and purpose for which it was intended.

39. Defendants were aware of the probably consequences of the aforesaid conduct. Despite the fact that Defendants knew, or should have known, that Zyprexa caused serious injuries, it failed to disclose the known or knowable risks associated with the products as set forth above. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of the safety of Plaintiffs.

40. As a result of the carelessness and negligence of Defendants, the aforesaid product caused Plaintiffs to thereby sustain the damages and injuries as herein alleged.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## COUNT IV

### (Breach of Implied Warranty)

41. Plaintiffs reallege paragraph 1-40 of the Complaint as if set out here in full.

42. At all times mentioned herein, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was prescribed to Plaintiffs, Defendants impliedly warranted to Plaintiffs, and to his agents, that the product was of merchantable quality and safe for the use for which it was intended.

43. Plaintiffs and his agents relied on the skill and judgment of Defendants in using the aforesaid product.

44. The product was unsafe for its intended use and it was not of merchantable quality as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. The aforesaid product did cause Plaintiffs to sustain damages and injuries as herein alleged.

45. After Plaintiffs was made aware of his injuries as a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## COUNT V

### (Breach of Express Warranty)

46. Plaintiffs reallege paragraphs 1-45 of the Complaint as if set out fully herein.

47. The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising,

advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

48. At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

49. Plaintiffs and their physicians reasonably relied upon the skill and judgment of Defendants and upon said express warranty in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiffs and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid product could and did thereby cause Plaintiffs to sustain damages and injuries as herein alleged.

50. As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, Defendants were notified of the breach of said warranty.

WHEREFORE, Plaintiffs pray for judgment against Defendant as hereinafter set forth.

## COUNT VI

### (Fraud)

51. Plaintiffs reallege paragraphs 1-50 of the Complaint as if set out fully herein.

52. Defendants falsely and fraudulently represented to Plaintiffs, his physicians and members of the general public, that the aforesaid product was safe for use to aid in

treating bipolar disorder. The representations by aid Defendants were in fact, false. The true facts include, but are not limited to, the fact that the aforesaid products were not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiffs.

53. The representations by Defendants were, in fact, false. The true facts were that the products were not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the products, including but not limited to, the development of diabetes mellitus, that the products caused injuries, including but not limited to diabetes mellitus, and death and Defendants did not disclose or warn users and their physicians about the known risk of injury in using the products. Defendants misrepresented the safety of the products, represented that the products marketed were safe for use in bipolar disorder treatment, and concealed warnings of the known or knowable risks of injury in using the products.

54. When said Defendants made these representations, they knew they were false. Defendants made said representations with the intent to defraud and deceive Plaintiffs and with the intent to induce him to act in the manner herein alleged, i.e., to use the aforementioned product to aid in treatment of bipolar disorder.

55. At the time Defendants made the aforesaid representations and a the time Plaintiffs took the actions herein alleged, Plaintiffs and their physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs were induced to, and did, use the aforesaid product as herein described. If Plaintiffs had known the actual facts, he would not have taken such action. The reliance of Plaintiffs and their physicians upon Defendants'

representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

56. As a result of Defendants' fraud and deceit, Plaintiffs were caused to sustain the herein described injuries and damages.

57. In doing the acts herein alleged, Defendants acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendant.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## COUNT VII

### (Negligent Misrepresentation)

58. Plaintiffs reallege paragraphs 2-57 of the Complaint as if set out fully herein.

59. Defendants had an absolute duty to disclose the true facts regarding the safety of Zyprexa as the only entities capable of knowing and reporting the true facts regarding the safety and testing of Zyprexa. Furthermore, Defendants had a duty to ensure it had a reasonable basis for making the representations as set forth above.

60. Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient representations. Furthermore, Defendants were aware that without such information they could not accurately make the aforesaid representations.

61. The aforesaid representations were made to the physician prescribing Zyprexa prior to the date it was prescribed to Plaintiffs and the physician relied on the representations about the safety of Zyprexa when prescribing Zyprexa to Plaintiffs.

62. At the time the aforesaid representations were made, Defendants concealed from Plaintiffs and his physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

63. The aforesaid representations were made by Defendants with the intent to induce Plaintiffs to act in the manner herein alleged, that is, to ingest Zyprexa as prescribed.

64. Defendants falsely represented to Plaintiffs, their physicians and members of the general public, that the aforesaid product was safe for use to aid in treatment of bipolar disorder. The representations by said Defendants were in fact, false. The true facts were that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiffs and thereby caused his injuries.

65. Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information it could not accurately make the aforesaid representation.

66. At the time Defendants made the aforesaid representations, and at the time Zyprexa was prescribed to Plaintiffs, Plaintiffs and his physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs ingested Zyprexa as herein described. If Plaintiffs had

known the actual facts, he would not have taken such action. The reliance of Plaintiffs and their physicians upon Defendants' representations were justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

67. As a result of Defendants' false representations and concealment, Plaintiffs was caused to sustain the herein described injuries and damages.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## COUNT VIII

### (Fraud By Concealment)

68. Plaintiffs reallege paragraphs 1-67 of the Complaint as if set out herein.

69. At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs, and to his physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and how likely it was to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes indicated. Defendants withheld the above to Plaintiffs, his physicians and the general public prior to the date Zyprexa was prescribed to Plaintiffs, while concealing the following material facts.

70. At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs and to his physicians the true facts concerning the aforesaid product; that is, that use would cause injuries including but limited to, diabetes mellitus.

71. At all times herein mentioned, Defendants intentionally, willfully and maliciously concealed or suppressed the facts set forth above from Plaintiffs' physicians and therefore from Plaintiffs, with the intent to defraud as herein alleged.

72. At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product to aid in treatment of bipolar disorder.

73. As a result of the concealment or suppression of the facts set forth above, Plaintiffs sustained injuries and damages as hereinafter set forth.

74. In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs is therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

75. That at all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs' physicians and therefore from Plaintiffs, with the intent to defraud Plaintiffs as herein alleged.

76. At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, that Zyprexa would not have been prescribed to Plaintiffs and the minor child would not have ingested it.

77. As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries and damages as hereinafter set forth.

78. In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs is therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendants' wealth, and

sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1. For general damages in the amount of $10,000,000.00;

2. For past and future medical, hospital, incidental and service expenses according to proof;

3. For pre-judgment and post-judgment interest provided by law;

4. For economic losses according to proof;

5. For costs of suit herein;

6. For punitive or exemplary damages against all Defendants in the amount of $25,000,000.00; and

7. For such other and relief as the Court may deem just and proper.

Respectfully submitted,

J.P. SAWYER, Ohio Bar No. 0074907
Attorney for Plaintiffss

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, Alabama 36104
Telephone: (334)269-2343
Facsimile: (334)954-7555

## JURY DEMAND

Plaintiffs respectfully demands trial by jury on all counts in this cause.

OF COUNSEL

**Defendant's Address for Service:**

**Eli Lilly and Company**
**National Registered Agents, Inc.**
**145 Baker Street**
**Marion, Ohio 43302**

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY WEATHERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: _____ |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| YOLANDA MCCAIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF YOLANDA MCCAIN

Yolanda McCain, under penalty of perjury, states as follows:

1.     I am employed as a sales representative for Eli Lilly and Company ("Lilly").  The facts set forth herein are based upon my personal knowledge.

2.     I have been named as a defendant in this case.  I have consented to the removal of this case to federal court.

3.     My knowledge of Zyprexa® was derived exclusively from training materials and education provided to me by Lilly.  Lilly provided FDA-approved package inserts and other information regarding the medicines I detailed, including Zyprexa.  I had no involvement in the manufacture or development of Zyprexa, or the preparation of package inserts, and had no control over content or other written warnings.

4.     As a sales representative, I was not expected to conduct any independent research regarding the medicines that I detailed and I never conducted any such research.  I was not expected to, and did not, review any independent scientific studies published in journals unless they were specifically provided to me by Lilly.

5.     My responsibilities as a sale representative are to provide approved information to physicians about certain prescription medicines sold by

Lilly. All my work relating to Zyprexa was within the scope of my employment by Lilly.

6.     I have never misrepresented, concealed, and/or withheld information in my possession concerning the risks of Zyprexa. Any allegations to the contrary are false.

7.     I was not aware of any risks associated with Zyprexa, other than those provided in the FDA-approved Package Insert for Zyprexa.

I declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. § 1746, that the foregoing is true and correct.

Date:  July 24, 2006.                    _____
                                         Yolanda McCain

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NELLIE BOWMAN,

    Plaintiff,

v.

COLEMAN COMPANY, INC., et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.

96-0443-P-C

## REPORT AND RECOMMENDATION

Plaintiff Nellie Bowman ("Ms. Bowman") has filed a motion to remand this action to the Circuit Court of Mobile County, Alabama on the ground that removal was improvidently granted (tab 7). In a motion addressing the same substantive issues, defendant Michael Elkins ("Mr. Elkins") has moved for dismissal of all claims asserted against him by the plaintiffs (tab 3). These motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 26. After careful consideration of the arguments raised by the parties in their briefs and at oral argument, the Court recommends that the motion to remand be DENIED and the motion to dismiss be GRANTED for the reasons set forth below.

I. Factual Background[1]

On November 3, 1995, the plaintiff's son, Andrew Bowman ("Mr. Bowman"), purchased a Coleman PowerMate, 17,000 BTU, propane radiant heater, Model No. 5017-751T, at a Lowe's

---

[1] For the purposes of the motions being considered, the facts are construed in the light most favorable to the plaintiff. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983) (in considering fraudulent joinder issue, questions of fact must be assessed in plaintiff's favor); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (in summary judgment context, court considers all inferences drawn from underlying facts in light most favorable to nonmovant).

retail store in Mobile, Alabama. Because he was dissatisfied with a similar heater which had not functioned properly, Mr. Bowman spoke with Mr. Elkins, the Lowe's store manager, about the possibility of exchanging his old heater for a new one. Mr. Elkins agreed to allow Mr. Bowman to exchange his malfunctioning heater for the Coleman heating unit which is the subject of this lawsuit. Prior to the sale of the new heater, Mr. Elkins allegedly advised Mr. Bowman that the Coleman unit was a good heater and that Mr. Bowman would not experience any problems with it. On February 3, 1996, the plaintiff sustained severe burns when the Coleman PowerMate heater which her son had purchased at Lowe's on Mr. Elkins' verbal endorsement allegedly malfunctioned.

On March 26, 1996, Ms. Bowman filed the instant lawsuit against defendants Coleman Company, Inc. ("Coleman"), Lowe's Home Centers, Inc. ("Lowe's"), and Mr. Elkins in the Circuit Court of Mobile County, Alabama. On May 10, 1996, the defendants removed this action to federal court pursuant to 28 U.S.C. §§ 1441 *et seq.* In their notice of removal, defendants indicated that federal subject matter jurisdiction was predicated on diversity of citizenship. The plaintiff now seeks remand of this action to state court on the ground that this Court lacks diversity jurisdiction. Defendant Mr. Elkins has also moved for dismissal of all causes of action raised against him. Pursuant to Rule 12(b), Fed.R.Civ.Pro., the Court is construing the motion to dismiss as a motion for summary judgment under Rule 56, Fed.R.Civ.Pro. Both motions have been thoroughly briefed, and oral argument was held before the undersigned on June 3, 1996.

II. Legal Analysis

A. Fraudulent Joinder of Defendant Mr. Elkins

The merits of plaintiff's motion to remand hinge on the presence or absence of complete

2

diversity of citizenship in this action. See 28 U.S.C. § 1332(a) (conferring upon federal district courts original jurisdiction over actions between citizens of different states where amount in controversy exceeds $50,000). It is well-established that diversity jurisdiction requires complete diversity of citizenship, such that no party on one side of a controversy may be a citizen of the same state as any party on the other side. See, e.g., Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1359 (11th Cir. 1996); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1557 (11th Cir. 1989). In the case at bar, it is undisputed that the plaintiff is a citizen of Alabama, while defendant Coleman is a Kansas corporation with its principal place of business in Kansas and defendant Lowe's is a North Carolina corporation with its principal place of business in North Carolina. Defendant Mr. Elkins is a citizen of Alabama. Despite the lack of diversity between the plaintiff and Mr. Elkins, the defendants removed this action on the ground that Mr. Elkins' citizenship should not be considered because he was fraudulently joined as a defendant.

The presence of a non-diverse party who has been fraudulently joined does not destroy a federal court's diversity jurisdiction over an action. See Tapscott, 77 F.3d at 1359; Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). A defendant is considered fraudulently joined if there is "no possibility the plaintiff can establish any cause of action against the resident defendant."[1] Cabalceta, 883 F.2d at 1561; Aubrey v. United Companies Lending Corp., 872 F. Supp. 925, 929 (S.D. Ala. 1995). As the parties seeking removal, the defendants bear the burden of proving that there is no possibility that a state court would find the plaintiff's complaint to state

---

[1] A second avenue for establishing fraudulent joinder exists where the plaintiff has fraudulently pled jurisdictional facts in order to bring a resident defendant into state court. See Tapscott, 77 F.3d at 1360 n.17; Cabalceta, 883 F.2d at 1561. The defendants in this case have not alleged fraud in the pleading of jurisdictional facts; therefore, this means of establishing fraudulent joinder is not applicable here.

3

a cause of action against Mr. Elkins, and that Mr. Elkins' joinder in this matter was therefore fraudulent. *See Cabalceta*, 883 F.2d at 1561; *Lane v. Champion International Corp.*, 827 F. Supp. 701, 707 (S.D. Ala. 1993) (declaring that removing party must establish fraudulent joinder by clear and convincing evidence). In ruling on this issue, the district court must assess all questions of fact and controlling law in favor of the plaintiff. *See id.*; *Coker*, 709 F.2d at 1440.

### 1. Plaintiff's Claims Under AEMLD

The first cause of action asserted against Mr. Elkins in the complaint is a claim under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). A plaintiff can invoke the AEMLD only as to manufacturers and sellers of allegedly defective products. *See Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987). The Alabama Supreme Court recently summarized the criteria which a plaintiff must satisfy in order to maintain an AEMLD action against a seller of a product as follows:

> "To establish liability under the AEMLD, the plaintiff must show that he suffered an injury caused by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer; that the seller was engaged in the business of selling such a product; and that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold." *Carter v. Cantrell Machine Co., Inc.*, 662 So.2d 891, 892 (Ala. 1995) (citing *Sapp v. Beech Aircraft Corp.*, 564 So.2d 418 (Ala. 1990)).

An obvious threshold inquiry to a finding of AEMLD liability is a determination of whether a particular defendant may be labeled a "seller" of a product. The defendants argue vigorously that Mr. Elkins cannot properly be deemed a seller of the Coleman heater purchased by Mr. Bowman. Because Mr. Elkins was an employee of Lowe's, defendants contend, he was merely an agent of the seller and therefore cannot be liable under the AEMLD. In response, the plaintiff asserts that it is incongruous at best for the defendants to contend that Mr. Elkins, a

4

salesperson by trade, should not be considered a seller under the AEMLD.

Alabama courts have not addressed the question of whether a retail store employee may properly be considered as seller of a product, for AEMLD purposes.[1] However, several other jurisdictions have faced similar questions in analogous circumstances. For example, in *Memphis Bank & Trust Co. v. Water Services, Inc.*, 758 S.W.2d 525 (Tenn. 1988), the Tennessee Supreme Court examined whether a salesman for a manufacturer of a water treatment device could be deemed a "seller" or a "manufacturer" for products liability purposes. In that case, the court set aside a judgment against the salesman, pursuant to the following findings:

> "[The individual defendant] is shown by the uncontradicted evidence in this case to be a sales representative of the corporate defendant. On all sales made for his employer he was paid a commission. He was neither a stockholder, a director nor an officer of the corporate defendant, insofar as the record shows. The corporation is clearly both a 'manufacturer' and a 'seller'. . . [The individual defendant] was neither." *Id.* at 526.

Likewise, in *Musser v. Vilsmeier Auction Co.*, 562 A.2d 279 (Pa. 1989), the Pennsylvania Supreme Court held that an auctioneer is not a "seller" for the purposes of establishing products liability. In support of this decision, that court reasoned that the auctioneer was simply "the means of marketing" the product, and that he was "not equipped to pass upon the quality of the myriad [] products he is called upon to auction". *Id.* at 282; *see also Tauber-Arons Auctioneers Co., Inc. v. Superior Court for County of Los Angeles*, 161 Cal.Rptr. 789, 798 (Cal.App.2 Dist. 1980) (finding that auctioneer cannot be liable under strict products liability where auctioneer is a marketer who played "no more than a random and accidental role" in the distribution of a

---

[1] At oral argument, the plaintiff directed the Court's attention to *Caudle v. Patridge*, 566 So.2d 244 (Ala. 1990), in which an individual seller was held liable under the AEMLD. However, the individual's liability in *Caudle* was predicated on his status as a sole proprietor, not as a salesman; therefore, the *Caudle* decision is inapposite.

-5-

defective product). More importantly, the Musser court observed that:

> "Sellers may sell in any fashion they choose: sky writing, signs, handbills, electronic media or any method to suit their purpose, including auction. When they do they remain liable and the agents of their method are but agents and extensions of their enterprise [and are not liable]." Musser, 562 A.2d at 283.

Though cases like Memphis Bank and Musser originate in and apply the law of other jurisdictions, they strongly suggest that Mr. Elkins cannot be considered a "seller" under AEMLD.[4]

More generally, the applicable case law is clear that the policy aims of strict products liability for sellers would not be furthered by sweeping individuals such as Mr. Elkins within the doctrine's ambit. Indeed, in creating the AEMLD, Alabama's high court explained its intention to place "the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products." Atkins v. American Motors Corp., 335 So.2d 134, 139 (Ala. 1976). This rationale is consistent with the policy justifications articulated by numerous other state courts for expanding products liability to embrace all entities within the distributive chain of a defective product. For example, in Nutting v. Ford Motor Company, 584 N.Y.S.2d 653, 657 (N.Y.A.D.3 Dept. 1992), a New York court observed that the policy considerations for seller liability included the following:

> "[T]he ability of the seller, because of its continuing relationship with the manufacturer, to exert pressure for the improved safety of products and to recover

---

[4]This view is further bolstered by the fact that numerous jurisdictions have held that liability in a products liability case should extend only to those in the distributive chain through which products travel in order to reach the market. See, e.g., Parker v. St. Vincent Hospital, 919 P.2d 1104 (N.M. App. 1996); Dunn v. Kanawha County Board of Education, 459 S.E.2d 151 (W.Va. 1995); Daly v. General Motors Corp., 575 P.2d 1162, 1170 (Cal. 1978); Embs v. Pepsi-Cola Bottling Co. of Lexington, Kentucky, Inc., 528 S.W.2d 703, 705 (Ky. 1975); Allison Steel Mfg. Co. v. Superior Court of Maricopa County, Division Three, 511 P.2d 198, 202 (Ariz.App. 1973). While a salesman may be an agent of an entity in the distributive chain, the salesman himself is not a part of such a chain.

6

increased costs within their commercial dealings, or through contribution or indemnification in litigation; additionally, by marketing the products as a regular part of their business such sellers may be said to have assumed a special responsibility to the public, which has come to expect them to stand behind their goods." Id. at 657 (quoting Sukljian v. Charles Ross & Son Co., 503 N.E.2d 1358 (N.Y. 1986)); see also Crowe v. Public Building Commission of Chicago, 370 N.E.2d 32, 34 (Ill. App. 1 Dist. 1977) (supplier liability for defective products is driven by general considerations of justice which dictate that those who create the risk and reap the profit should also bear the loss); Kasel v. Remington Arms Co., 101 Cal. Rptr. 314, 323 (Cal.App. 2 Dist. 1972) (sellers are held liable because they have participatory connection, for personal profit or other benefit, with the injury-causing product and with the enterprise that created consumer demand for and reliance on the product).

Mr. Elkins is an employee of a corporate defendant. In his position as store manager, he has no authority to compel or prevent the distribution of particular products by Lowe's, for such product distribution decisions are vested in the Lowe's home office, rather than in its individual store managers. See Elkins Deposition, at 34-35, 74. While Lowe's likely has accumulated sufficient market power to exert pressure on manufacturers to improve the safety of their products, Elkins has not. Likewise, it is Lowe's, and not Mr. Elkins, who reaps the profit from the distribution of products such as the Coleman heater; therefore, it is Lowe's, and not Mr. Elkins, who should be required to bear the risk of such products being defective.[1] Finally, Lowe's has a participatory market connection with Coleman, through which avenue Lowe's may be able to recoup the increased costs which it incurs as a result of seller liability. Mr. Elkins does not. In short, the policy goals underlying the AEMLD would not be advanced in any way by holding

---

[1]Mr. Elkins is a salaried employee of Lowe's. See Elkins Deposition, at 12. Although Lowe's does have an employee bonus program based, in part, on store profits, there is no evidence that this program would allow Mr. Elkins to reap any appreciable share of Lowe's profits earned from the distribution of defective products. The Court is of the opinion that a simple employee bonus plan, without more, is insufficient to activate the policy considerations of aligning profits and risks which underlie seller liability in the AEMLD context.

7

persons such as Mr. Elkins liable in their role as store managers or sales representatives.

In light of the foregoing analysis, the Court believes that neither the applicable case law nor the policy objectives articulated by Alabama and other state courts can support the extension of the AEMLD to encompass salespersons, store managers, or other agents of a retailer. Accordingly, the undersigned is of the opinion that there is no possibility that Ms. Bowman could successfully assert her AEMLD claim against Mr. Elkins in state court.

### 2. Plaintiff's Negligence/Wantonness Claims

The remaining causes of action advanced against Mr. Elkins in the complaint are negligence and wantonness claims. In particular, the plaintiffs allege that the store manager's actions were negligent and wanton inasmuch as he knew or should have known that the Coleman heater sold to Mr. Bowman was unsafe.[6] Defendants contend that there is no possibility that Ms. Bowman could assert these causes of action against Mr. Elkins in state court.

To recover in a negligence or wantonness action, a plaintiff must establish the following elements: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff as a result of that breach."[7] Kelly v. M. Trigg Enterprises, Inc., 605 So.2d

---

[6] According to the plaintiff, Mr. Elkins knew or should have known the heating unit was unsafe because it lacked a regulator and because there was no indication on its container that it had been approved by any independent testing laboratory.

[7] The criteria listed here are shared by both negligence and wantonness actions. In addition to those elements listed above, a party seeking to recover on a wantonness theory must also show that the defendant's omission of a duty was done with knowledge and consciousness of the likelihood of injury which would result from such an omission. See Lynn Strickland Sales and Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145 (Ala. 1987) (wantonness characterized by state of mind in which duty was omitted); Tyler v. City of Enterprise, 577 So.2d 876, 877 (Ala. 1991) (both negligence and wantonness claims require showing that defendant owed duty).

8

1185, 1190 (Ala. 1992) (quoting Hall v. Thomas, 564 So.2d 936, 937 (Ala. 1990)). Defendants argue that the plaintiff's negligence and wantonness claims against Mr. Elkins must fail because he owed her no duty of care. See Ledbetter v. United American Ins. Co., 624 So.2d 1371, 1373 (Ala. 1993) (whether there is duty is threshold inquiry in negligence case). In response, the plaintiff articulates three separate duties which Mr. Elkins allegedly owed to her: (1) a duty to prevent an unsafe product from entering the stream of commerce; (2) a duty to warn of the dangerous nature of a product; and (3) a duty to be careful not to hurt others.

With respect to the first alleged duty, it is clear that Mr. Elkins lacked the authority from Lowe's to prevent the Coleman heater from entering the stream of commerce. As stated above, Lowe's, and not Mr. Elkins, was responsible for deciding which products to distribute at the Mobile store. Plaintiff cites no authority for the proposition that a salesman or store manager owes customers a duty to prevent unsafe products from entering the stream of commerce.[*] Moreover, the recognition of such a duty would impose strict products liability on persons such as Mr. Elkins based on an employer's decision to market a certain product. As a practical matter, this rule would result in salespeople with no control over product marketing or distribution decisions being declared negligent for those decisions. Under Alabama law, "the duty issue is essentially a public policy question, i.e., whether the law should impose a requirement on the defendant that it do or refrain from doing some act for the safety and well-being of the plaintiff." Buchanan v. Merger Enterprises, Inc., 463 So.2d 121, 125-26 (Ala. 1984). Clearly, no public policy interest would be advanced by holding a salesperson liable in negligence for a corporate

---

[*]By the time the products reach the salesman, they have already entered the stream of commerce. The salesman simply acts as a marketing medium, an agent of his employer, in disseminating the goods.

9

decision into which he had no input and over which he had no control. The undersigned is of the opinion that Mr. Elkins owed Mr. Bowman no duty to prevent harmful products from entering the stream of commerce.

Second, the plaintiff asserts that Mr. Elkins owed her a duty to warn of the dangerous nature of the product. In support of this argument, Ms. Bowman cites <u>Caudle v. Partridge</u>, 566 So.2d 244, 247 (Ala. 1990), in which the Alabama high court stated that manufacturers and sellers have a duty to warn the public about products which they know or should know to be dangerous. <u>See id.</u> As indicated previously, Mr. Elkins is neither a seller nor a manufacturer; therefore, the <u>Caudle</u> decision does not impose any such duty to warn on him.[7]

Third and finally, Ms. Bowman invokes the general duty imposed by Alabama law on all persons to be careful not to hurt others. <u>See Smitherman v. McCafferty</u>, 622 So.2d 322, 324 (Ala. 1993); <u>Southeastern Greyhound Lines v. Callahan</u>, 13 So.2d 660, 663 (Ala. 1943). While Alabama courts do recognize such a general duty, they also state that the determination of whether this duty exists in a particular context should be based on the consideration of "a number of factors, including public policy, social considerations, and foreseeability." <u>Smitherman</u>, 622 So.2d at 324. For the reasons outlined previously, neither public policies nor social

---

[7]It is true that an individual may voluntarily shoulder a duty to inspect a product, in which case a duty to warn would arise. <u>See Adams v. Travelers Insurance Co.</u>, 494 So.2d 401, 403-04 (Ala. 1986). However, the uncontroverted evidence is that Mr. Elkins undertook no such voluntary duty and, indeed, lacked the training and expertise to perform inspections of Lowe's products. <u>See</u> Elkins Deposition, at 15-16, 33-34, 75-76. As a result, <u>Adams</u> cannot serve as a basis for finding that Mr. Elkins owed Mr. Bowman a duty to warn about the unsafe nature of the Coleman heater which he purchased. <u>Accord Cook v. Safeway Stores, Inc.</u>, 330 P.2d 375, 376 (Okla. 1958) (store clerk owes duty to supply customers wholesome food only where clerk has knowledge of unfitness or assumes duty to inspect food); <u>Crosby v. Calaway</u>, 16 S.E.2d 155, 159 (Ga.App. 1941) (same).

considerations would be furthered by the imposition of a duty of care on Mr. Elkins in this case. Moreover, the undersigned is of the opinion that the dangerous nature of the heater was not foreseeable to Mr. Elkins, who did not possess the training, expertise, background, or responsibility to inspect or test products such as the Coleman heater for defects. Therefore, the undersigned is of the opinion that no general duty of care is applicable in this case.

As this analysis demonstrates, it is evident that Mr. Elkins owed Ms. Bowman no duty which could give rise to personal liability on a negligence or wantonness theory. Hence, the undersigned believes that there is no possibility that the plaintiff could maintain such negligence or wantonness claims in state court. Given the Magistrate Judge's previous recommendations with respect to the AEMLD claims, the undersigned is of the opinion that the plaintiff fraudulently joined Mr. Elkins in this action, as there is no possibility that she could successfully interpose any of her claims against him in state court. Because Mr. Elkins has been fraudulently joined, his citizenship is immaterial for the purposes of evaluating the presence or absence of diversity jurisdiction in federal court. Complete diversity exists among the remaining parties. It is therefore the recommendation of the undersigned that the plaintiff's motion to remand be DENIED on the ground that there is complete diversity of citizenship among all parties properly joined and served in this litigation and that federal jurisdiction properly lies.

B. Mr. Elkins' Motion to Dismiss

By order dated July 11, 1996, this Court advised the parties that it would construe Mr. Elkins' motion to dismiss as a motion for summary judgment. The undersigned is of the opinion that the foregoing recommendation on the fraudulent joinder issue effectively disposes of the summary judgment issue, as well. Indeed, the undersigned has already determined that there is no

11

possibility that the plaintiff could pursue any of her state law claims against Mr. Elkins in state court. There being no possibility of relief, it necessarily follows that there can be no genuine issue of material fact with respect to any of plaintiff's claims against Mr. Elkins. Therefore, the Magistrate Judge believes that Mr. Elkins is entitled to judgment as a matter of law with respect to all of those claims, pursuant to Rule 56(c), Fed.R.Civ.Pro. Accordingly, the undersigned recommends that Mr. Elkins' motion for dismiss, which was treated as a motion for summary judgment, be GRANTED and that the claims against him be DISMISSED with prejudice.

III. Conclusion

For all of the foregoing reasons, the undersigned recommends that the plaintiff's motion to remand this action to the Circuit Court of Mobile County, Alabama, be DENIED, and that defendant Elkins' motion to dismiss be GRANTED and the claims asserted against him be DISMISSED with prejudice.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the 3rd day of September, 1996.

WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

P.13

OCT-31-2002   14:36

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection.**  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. S 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in Local Rule 26(4)(b), which provides that:

> Any party may object to a magistrate judge's proposed findings, recommendations or report made under 28 U.S.C. S 636(b)(1)(B) within ten (10) days after being served with a copy thereof.  The appellant shall file with the Clark, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his discretion or where required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

A Magistrate Judge's recommendation cannot be appealed to a Court of Appeals; only the District Judge's order or judgment can be appealed.

2.   **Transcript (applicable where Proceedings Tape Recorded).** Pursuant to 28 U.S.C. S 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

UNITED STATES MAGISTRATE JUDGE

01/27/04  13:46 FAX 9016807201          BUTLER, SNOW ATTY'S          @ 002

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

FILED

SOUTHERN DISTRICT OF MISSISSIPPI

FILED

JAN 21 2004

J.T. NOBLIN, CLERK

By _____ Deputy

HOWARD J. LIZANA, SR. and
SHEILA LIZANA                                    PLAINTIFFS

VERSUS                              CIVIL ACTION NO. 1:03cv254GRo

GUIDANT CORPORATION; GUIDANT
SALES CORPORATION; JOHN S. BURROW
and JOHN DOES 1-100                              DEFENDANTS

## ORDER

This cause comes before the Court on motion of the Plaintiffs, Howard and Sheila Lizana, to remand [5-1] the above referenced action to the Circuit Court of Harrison County, Mississippi. Pursuant to the Memorandum Opinion entered in this cause, this date, incorporated herein by reference, it is hereby,

ORDERED AND ADJUDGED that the Plaintiffs' motion to remand [5-1] this case to the Circuit Court of Harrison County, Mississippi, be, and is hereby denied. It is further,

ORDERED AND ADJUDGED that the Defendant John S. Burrow be, and is hereby, dismissed with prejudice. It is further,

ORDERED AND ADJUDGED that each party bear their respective costs associated with this motion.

SO ORDERED AND ADJUDGED this the 20th day of January, 2004.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
JAN 21 2004
J.T. NOBLIN, CLERK
By_____ Deputy

HOWARD J. LIZANA, SR. and
SHEILA LIZANA

**PLAINTIFFS**

VERSUS

CIVIL ACTION NO. 1:03cv254GRo

GUIDANT CORPORATION; GUIDANT
SALES CORPORATION; JOHN S. BURROW
and JOHN DOES 1-100

**DEFENDANTS**

MEMORANDUM OPINION

This cause comes before the Court on motion of the Plaintiffs, Howard and Sheila Lizana, to remand [5-1] the above referenced action to the Circuit Court of Harrison County, Mississippi. The Court has duly considered the record in this action, and the briefs of counsel, and being fully advised in the premises, concludes as follows.

The instant lawsuit stems from an incident on April 19, 2001, in which Plaintiff, Howard J. Lizana, Sr., collapsed at work, necessitating his transport to the emergency room at Garden Park Medical Center in Gulfport, Mississippi. Lizana was diagnosed with a malfunctioning pacemaker. (Mot. to Remand, Exh. D.) Lizana had a pacemaker which was manufactured by Guidant Corporation implanted on May 28, 1998. The pacemaker system was comprised of the following component parts: Discovery DR Model 1274 serial no. 400677; CPI Lead model 4269, serial No. 295695; and CPI lead model 4285, serial no. 249255. The pacemaker was routinely checked by Guidant representatives, including the check performed by the Defendant

01/27/04  13:47 FAX 9016687201         BUTLER, SNOW ATTY'S                                        @001

John Burrow on March 9, 2001, at which time Burrow concluded the pacemaker was performing as intended, according to the Plaintiffs. (Mot. to Remand, Exh. C.)

According to the Plaintiffs, on or about May 2000, the Medical Devices Agency of the UK Department of Health published a technical note [MDA PTN'83] on adverse incidents reported concerning several Guidant model pacemakers, which included model 1274. The pacemaker allegedly had premature battery depletion, and the incidents were reported to Guidant by May 2000. This incident was the subject of a recall reported by the Food and Drug Administration [FDA] on May 5, 1999. (Remand Mot., Exh. A.) According to the hospital emergency department notes, Lizana's pacemaker failed, and a replacement pacemaker, model 12709 was implanted into Lizana on the following day. (Id., Exh. D.)

In the complaint, Plaintiffs seek damages from Defendants Guidant Corporation, Burrow, and John Does 1-100, claiming these Defendants are liable for designing and assembling the pacemaker which malfunctioned, for negligent failure to inspect and manufacture the pacemaker, and breach of warranty. (Comp., pp. 4-7.) The Plaintiffs maintain that Burrow discussed with them the reason for the pacemaker's failure, but did not inform them that the pacemaker was the subject of a recall. (Mot. to Remand, p. 9; Exh. C.) Burrow allegedly told the Lizana's that the pacemaker failed because of a dead battery. (Id., Exhs. C-D.) Plaintiffs contend that Burrow is liable in this case because he participated in the initial surgery when the pacemaker was implanted into Lizana and had tested the pacemaker in March 2001, assuring the Plaintiffs at that time that the pacemaker was functioning "perfectly." (Id.)

The Plaintiffs also argue that the Court should allow discovery for purposes of identifying the John Doe Defendants and that any ruling on the motion to remand should be postponed until

JAN 27 2004 14:44                              9016687201          PAGE.04

that discovery can be conducted. (Mot. to Remand, pp. 9-10.) In addition, the Plaintiffs seek an award of fees and expenses related to the removal. (*Id.*, p. 10.)

Defendants Guidant Corporation, Guidant Sales Corporation and Burrow, contend that Burrow was fraudulently joined, and that his citizenship should be disregarded for purposes of determining diversity jurisdiction. (Def.'s Resp., p. 1.) The Defendants maintain that the Plaintiffs cannot furnish a basis for recovery against Burrow, a sales representative, under Mississippi law. (*Id.*) According to the Defendants, Lizana's pacemaker was not the subject of a recall. (*Id.*; Mot. to Remand, Exh. A.) In addition, the Defendants assert that even if the pacemaker had been subject to a recall, that information is not relevant to the joinder of Burrow as a defendant because he is a mere salesperson. (*Id.*, p. 2.) According to the Defendants, sales representatives are not considered sellers of products under Mississippi law and cannot be liable for negligence, failure to warn, misrepresentation or breach of warranty. (*Id.*) Burrow had no duty to warn Lizana of an alleged defect in the pacemaker, according to the Defendants. (*Id.*, p. 4.) The Defendants argue that only the manufacturer had a duty to warn the physician of any alleged defect in the medical device. (*Id.*) Only the manufacturer can be liable for claims of breach of the warranty of merchantability or fraudulent misrepresentation, and sales representatives cannot be held liable under these theories according to the Defendants. (*Id.*, pp. 4-5.)

The Defendants also assert that the citizenship of any John Doe Defendants should be disregarded for purposes of removal. (*Id.*, p. 5.)

3

01/27/04  13:47 FAX 9016807201          BUTLER, SNOW ATTY'S                                                    @006

## Discussion

It is axiomatic that federal courts are courts of limited jurisdiction, having power only over those cases authorized by the United States Constitution and federal statutes. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). The burden of establishing that federal jurisdiction exists lies with the Defendants because they are seeking to invoke this Court's jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *cert. denied* 534 U.S. 993. All doubts are resolved against removal. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995). When a party invokes the doctrine of fraudulent joinder, the removing party must demonstrate that there is no possibility that the plaintiffs could establish a cause of action against the fraudulently joined party in state court. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

For purposes of removal, the Court disregards citizenship of Defendants sued under fictitious names. 28 U.S.C. § 1441(a). Accordingly, the Court finds that any assertions by the Plaintiffs that remand related discovery should be allowed to identify John Doe Defendants should be denied.

Under Mississippi law, the "learned intermediary doctrine" applies to all medical devices. *Moore v. Memorial Hosp. Of Gulfport*, 825 So.2d. 658, 664 (Miss. 2002). Under this doctrine, a medical device's manufacturer possesses a duty to warn a physician about possible dangers regarding the device, with sales representatives of the manufacturer under no obligation to warn patients about the device. *Bennett v. Madakasira*, 821 So.2d. 794, 804 (Miss. 2002). *Johnson v. Parke-Davis*, 114 F. Supp.2d 522, 525 (S.D. Miss. 2000). A sales representative, acting as agent for a disclosed principal, can be liable when he is found to have directly participated in the

4

alleged tortious conduct in the scope of his employment. *Walker v. Medtronic, Inc.*, 2003 WL 21517997, *3 (N.D. Miss. 2003). The Court finds that Burrow cannot be liable for any alleged failure to warn advanced by Plaintiffs' allegations in their complaint, and that there is no basis for any claim based on strict liability asserted against Burrow.

The Plaintiffs contend that Burrow was negligent based on his alleged failure to inspect and properly test the pacemaker and alleged failure to warn the Plaintiffs of the alleged design defect of the pacemaker. (Compl., p. 6.) As discussed above, Burrow had no legal duty to warn patients of possible problems regarding the medical devices. Furthermore, the Plaintiffs have offered no evidence beyond mere conjecture that Burrow was even aware of the recall of certain Guidant pacemaker devices. The Court cannot impose a duty to warn on Burrow when no evidence is presented connecting him with knowledge of the recall to support the Plaintiffs' claims. *See Johnson v. Parke-Davis*, 114 F.Supp. 2d 522, 524 (S.D. Miss. 2000). Finally, from the evidence presented to the Court, the serial number of Lizana's pacemaker was not one of the models subject to the recall.

In addition, the Plaintiffs offered no evidence showing Lizana's pacemaker was actually malfunctioning on March 9, 2001, when the Plaintiffs allege that Burrow stated the pacemaker was functioning "perfectly." (Mot. to Remand, Exh. A.) A plaintiff wishing to defeat a fraudulent joinder claim must plead specific facts and avoid advancing claims in general terms or make mere allegations of wrongdoing on the part of the non-diverse defendant. *Walker*, 2003 WL 21517997 * 5, citing *Guidry v. Bank of LaPlace*, 954 F.2d. 278, 281 (5th Cir. 1992). The Plaintiffs have presented no evidence to support the assertion that the pacemaker was in fact malfunctioning at the time Burrow's made the statement regarding its performance.

5

The Plaintiffs have offered no factual basis for their breach of warranty claim against Burrow, and even if they had, there is no legal basis for upholding a breach of warranty claim against Burrow. *Johnson*, 114 F. Supp.2d at525; *In re ... Prod. Liab. Litig.*, 133 F. Supp.2d 272, 286 (S.D. N.Y. 2001); *see McCurtis v. Dolgencorp, ... 968 F. Supp. 1146*, 1161 (S.D. Miss. 1997). The Court concludes that any claims advanced against Burrow for breach of warranty cannot succeed.

In conclusion, the Court finds that in absence of any facts or legal basis to support the claims advanced against Burrow, this Defendant was fraudulently joined in an effort to defeat diversity jurisdiction. As a result, the Court concludes that the Plaintiffs' motion to remand should be denied, and that Burrow should be dismissed with prejudice from this suit. Finally, the Court finds nothing within the motion to merit an award of fees to either party as a result of the removal. *W.H. Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997).

### Conclusion

For the aforementioned reasons, the Court finds that the Plaintiffs' motion to remand this case [5-1] to the Circuit Court of Harrison County should be denied. The Court further finds that Burrow should be dismissed with prejudice from this suit. A separate Order in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue this date. Each party shall bear its respective costs in connection with this motion.

THIS the 20th day of January, 2004.

UNITED STATES DISTRICT JUDGE

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-80620-CIV-MARRA

BRUCE STERN,

    *Plaintiff,*

vs.

WYETH and ROBERT G. BLOUNT,

    Defendant.

_____ /

FILED by _____ D.C.

JAN 2 2 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## ORDER DENYING MOTION FOR REMAND

THIS CAUSE is before the Court upon Plaintiff's Motion for Remand [DE 3]. The Court has carefully considered the motion and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff filed this lawsuit in state court against Defendant Wyeth, a pharmaceutical manufacturer formerly known as American Home Products Corporation, and Robert G. Blount, a former Chief Financial Officer, Senior Executive Vice President, Director and member of Wyeth's Executive, Finance and Operations Committee. Defendant Blount retired from Wyeth in February, 2000, and became a citizen of the state of Florida. Plaintiff, a Florida citizen as well, brings state law product liability claims for negligence, negligence per se, design and marketing defects, inadequate and improper warnings and misrepresentation against both Defendants in connection with the fen-phen diet drugs manufactured by Wyeth. Defendant removed the case to federal court based

*13*

P.03

upon diversity jurisdiction by alleging fraudulent joinder of Defendant Blount. Plaintiff has moved to remand the case to state court.[1]

## II. DISCUSSION

Plaintiff filed a twenty-three (23) page, seventy-five (75) paragraph complaint asserting four counts sounding in tort. The complaint, in great detail, asserts a litany of wrongful acts giving rise to the causes of action. Only one of the seventy-five (75) paragraphs specifically mentions Defendant Blount. See ¶ 4 of Plaintiff's Original Complaint. Plaintiff merely claims that Blount was a former Wyeth officer, director and committee member. As a result, Plaintiff asserts Blount had responsibility for the management of Wyeth's business and operations, that he directly participated in Wyeth's management and was privy to confidential and proprietary information regarding the subject pharmaceutical products, including adverse undisclosed information. Plaintiff further contends Blount's execution of documents filed with the Securities and Exchange Commission ("SEC"), which contained information regarding the subject pharmaceuticals, was materially misleading. Plaintiff then asserts in a footnote, in what can only be described as an attempt at artful pleading, that all references to the Defendant Wyeth also constitute references to Defendant Blount. Thus, every alleged wrongful act of the corporate Defendant is also alleged to

---

[1] Recently, this case was transferred to the Eastern District of Pennsylvania by Order of the Multi-District Litigation Panel. This Court enters this Order following the general policy that a fully briefed ripe motion at the time of transfer must still be resolved by the transferor court.

2

P.04

be an act of Defendant Blount.[1] See Plaintiff's Original Complaint, n.2 at 5-6.

Defendants argue that Defendant Blount was fraudulently joined by Plaintiff for the sole purpose of defeating diversity. In Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998), the Eleventh Circuit identified three instances in which a joinder of a non-diverse party is fraudulent, and does thus not defeat diversity jurisdiction: (1) where there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant; (2) where there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. See also Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1380 (11th Cir.1998). The burden of the removing party is a "heavy one." Crowe, 113 F.3d at 1538. To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff, though the Court may look beyond the pleadings. Id., citing B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981).

Defendants contend that there is no possibility that Plaintiff can establish a cause of action against Defendant Blount, and that Blount has no real connection to the claim against Wyeth. In its motion to remand, Plaintiff asserts that Blount may be held liable for negligence and

---

[1] Plaintiff's complaint was filed in a Florida state court. Attorneys filing pleadings in the Florida courts are required to abide by the Florida Rules of Judicial Administration. Rule 2.060(c) of the Florida Rules of Judicial Administration provides that "[t]he signature of an attorney [on a pleading] shall constitute a certificate by the attorney that . . . to the best of the attorney's knowledge, information, and belief there is good ground to support it." The Court questions whether there is good ground to support Plaintiff's attempt to attribute every act of the corporate Defendant to Defendant Blount by virtue of this pleading device.

3

P. 05

misrepresentation. Plaintiff's Motion to Remand at ¶¶ 7, 12; Brief in Support of Plaintiff's Motion to Remand at 3-11.[1] In Florida, in order for a corporate officer to be liable for torts committed principally by the corporation, the corporate officer must have personally participated in the tortious conduct. McElveen v. Peeler, 544 So.2d 270, 271-72 (Fla. 1st DCA 1989); Alsup v. Your Graphics Are Showing, Inc., 531 So.2d 222, 224 (Fla. 2nd DCA 1988). See also Florida Specialty, Inc. v. H 2 Ology, Inc., 742 So.2d 523, 527-28 (Fla. 1st DCA 1999). Other factors include whether the corporation owes a duty of care to the plaintiff, whether the duty is delegated to the defendant officer, and whether the defendant officer has "breached this duty through personal – as opposed to technical or vicarious – fault." Personal liability cannot be imposed upon a corporate officer simply because of his or her general administrative responsibility in performance of some functions of the employment. The officer must have a personal duty towards the injured party. McElveen, 544 So.2d at 272.

Both parties agree that in Florida, misrepresentation requires: (1) a false statement about a material fact; (2) knowledge that the statement is false; (3) intent to induce action on the false statement; and (4) injury by the party acting in reliance on the representation. Johnson v. Davis, 480 So.2d 625, 627 (Fla. 1985). For the negligence claim, the usually elements of duty, breach, causation and damages are required, as modified by the McElveen factors for personal liability of corporate officers.

Plaintiff alleges that Blount had access to documents raising safety concerns about the diet-drugs at issue; that Blount breached his affirmative duty to disclose this information; and that Blount

---

[1] Plaintiff does not challenge Defendants' assertion in its Amended Notice of Removal that the amount in controversy in this case exceeds the jurisdictional amount of $75,000.00.

4

made misrepresentations about safety of these drugs when he signed Securities & Exchange Commission filings on behalf of Wyeth. Finally, Plaintiff alleges that Blount, as part of the senior management of Wyeth, ordered or was complicit in orders given to destroy adverse drug reports made to Wyeth.[4]

In opposition to the motion to remand, Defendant has put forth the affidavit of Defendant Blount, in which he states that as Chief Financial Officer of Wyeth and its predecessors, he principally worked on the financial side of the company. Declaration of Robert G. Blount, ¶ 3, Exhibit A to Defendants' Opposition to Remand [DE 4] (hereinafter, "Blount Declaration"). Blount retired from Wyeth in February 2000, at which time he moved his permanent residence to Florida. More importantly, Blount asserts that never had oversight responsibility for the subsidiaries and divisions involved in pharmaceutical manufacturing, design or marketing. Id. at ¶ 4. He denies any knowledge of any adverse drug reports, case studies or other information concerning a possible relationship between Pondimin or Redux and heart valve damages until the Mayo Clinic's public announcement in July, 1997, nor did he have knowledge of any document destruction. Id. at ¶ 6-7.

Defendants also put forth the declaration of Defendants' co-counsel, Richard Rosenbaum, stating that he caused a search to be performed of all SEC filings signed by Defendant Blount from 1994 until the July, 1997 announcement of problems with Wyeth's fen-phen drugs. Mr. Rosenbaum attests that he found no filings which made any representations about the safety of Pondimin and Redux. Plaintiff's theory of liability on the misrepresentation claim could therefore only be based on a material omission, stemming from Blount's alleged knowledge of such problems.

---

[4] Defendants point out that this allegation is not made in the Complaint, but only in the motion to remand.

5

P.07

In this case, Plaintiff's Complaint has failed to allege personal involvement by Defendant Blount in the tortious conduct which has allegedly resulted in injury to the Plaintiff. Nor does Plaintiff allege that the duties owed by Defendant Wyeth to Plaintiff were delegated to Defendant Blount. Moreover, Plaintiff has failed to allege the specific statements which he claims Defendant Blount misrepresented or failed to disclose in SEC filings and he has failed to allege that any alleged misrepresentations or omissions were done by Defendant Blount with the intent to defraud or deceive Plaintiff. Additionally, Plaintiff has failed to allege that he has relied to his detriment upon any of the misrepresentations allegedly attributed to Defendant Blount. Lastly, based upon the unrebutted declarations from Defendant Blount and Richard Rosenbaum, Plaintiff would not be able to assert valid claims if given leave to amend.

This Court concludes that under the first prong of the test set forth in Triggs, 154 F.3d at 1287, Plaintiff has not stated a possible claim against Defendant Blount as to the negligence and misrepresentation claims. In addition, the third prong of the Triggs test has been met in that Blount was clearly added in this case to defeat diversity. Defendant Blount has no connection to Wyeth's alleged torts committed against Plaintiff.[5]

---

[5] The Court notes that the jurisdictional facts as pled are not fraudulent. Triggs, 154 F.3d at 1287 (second alternative prong of fraudulent joinder test).

6

### III. CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Remand [DE 3] is hereby DENIED.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this _22nd_ day of January, 2003.

KENNETH A. MARRA
United States District Judge

copies to:

United States District Judge Harvey Bartle III
United States Courthouse
601 Market Street
Philadelphia, PA 19106

Andres Pereira, Esq.
Fleming & Associates, LLP
1330 Post Oak Boulevard, Suite 3030
Houston, TX 77056
Fax: (713) 621-9638

Michael C. Mattson, Esq.
Cooney, Mattson et al
P.O. Box 14546
Fort Lauderdale, FL 33302
Fax: (954) 568-0085

7